Battle, J.
 

 This was an action for an assault and battery, committed by the defendant upon the plaintiff, in which the plaintiff sought to recover, and did recover what is called vindictive or punitory damages or smart money. In such an action, it is generally, if not always important to ascertain, as far as possible, by what motives the wrong-doer was actuated; for, upon the character of those motives, the amount of the damages must materially depend. If the attack upon the person of the plaintiff be cool and deliberate, -wanton and unpro
 
 *193
 
 voked, the jury will be justified in assessing very high damages ; while on the contrary, if the defendant commit the battery under the influence of passion, excited by an actual or supposed injury done, or insult offered to him by the plaintiff, the damages ought to be comparatively low. Motive, then, being an essential ingredient in the offense, is certainly a proper subject of proof. Itfrequently happens, however, that this proof cannot be made by any direct testimony, and each party is necessarily, driven to rely upon the indirect or presumptive evidence, arising from the conduct of the opposite party. That such presumptions' are allowable, and why they are so, is very well explained b'y Mr. Starkie in his excellent “Practical treatise on the law of evidence,” (seel Stark. Ev. m. p. 50 and 51.) lie- says, “Presumptions, and strong ones, are continually raised upon knowledge of the human character, and of the motives, passions and feelings, by which the mind is usually influenced. Experience and observation show that the conduct of mankind is governed by general laws, which operate, under similar circumstances, with almost as much regularity and uniformity as the mechanical laws of nature themselves do. The effect of particular motives upon human conduct, is the subject of every man’s observation and experience, to a greater or less extent, and in proportion to his attention, means of observation and acuteness, every one becomes a judge of the human character, and can conjecture on the one hand, what would be the effect and influence of motives upon any individual under particular circumstances ; and on the other hand, is able to presume and infer the motives by which an agent was actuated, from the particular course of conduct which be adopted. Upon this ground it is, that evidence is daily adduced in courts of justice of the particular motives by which a party was influenced, in order that the jury may infer what his conduct was, under those circumstances ; and, on the other, juries are as frequently called upon to infer what a man’s motives and intentions have been, from his conduct and bis acts. All this is done because every man is presumed to possess a knowledge of the connection
 
 *194
 
 between motives and conduct, intention and acts, which he has acquired from experience, and he able to presume and infer the one from the other.”
 

 The direct bearing of these remarks upon the case now before us, is obvious. The defendant being upon friendly terms heretofore with the plaintiff, went to his store and beat him in his own house, in the presence of his daughter. What motive prompted him to commit so lawless and violent an act ? The jury, who were called upon to decide upon the questions connected with that act, had a right to infer the motive from his conduct, which being
 
 pars rei gestae,
 
 was evidence for him. What then was his conduct ? The witness stated that, he came to the store of the defendant, and walking up to him said, “ How dare you send a letter to my bouse.” What motive can fairly and reasonably be inferred from such conducts but that a letter was sent by the plaintiff to the defendant’s house, which was, or which the defendant supposed tobe, offensive in its terms. It is impossible to suppose that a sane man would have acted towards one with whom he was on friendly terms, as the defendant did towards the plaintiff, unless he, in some way, felt himself aggrieved by the act of the other. If such an inference, then, was a fair and reasonable one, the jury had a right to draw it, and his Honor erred in instructing them otherwise. Nor was that error cured by the failure of the defendant to produce the
 
 letter, and
 
 offer it in evidence, so (hat the jury might see the contents aad judge for themselves, whether they were offensive or not. It did not appear that the defendant had the letter in his possession. He may have refused to receive it, or may have sent it back. But even if he had the possession of it, his non-production of it was only evideuce for the considera!ion of the jury, as to the character of its contents, but did not justify the court in withdrawing from, the jury the right to make their own inferences, from the conduct of the defendant. His Honor very properly said, that there was no evidence that the letter was sent or directed to the defendant’s daughter, but he went too far in instructing the jury that they could not infer that
 
 *195
 
 it was offensive or insulting to the defendant himself. His conduct showed clearly, that it.was so, or that he thought it was so, and though his non-production of the letter, (supposing that he had it) may have weakened the testimony, it did not entirely destroy it.
 

 Per Curiam,
 

 Judgment reversed, and a
 
 venire de novo.